UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLOBAL WEATHER PRODUCTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>REUTERS NEWS & MEDIA, INC.,<br>THOMSON REUTERS US LLC,<br><br>Defendants. | Case No.:<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff Global Weather Productions LLC ("*Plaintiff*"), by and through its undersigned counsel, for its Complaint against defendant Reuters News & Media, Inc. ("*Reuters*"), and defendant Thomson Reuters US LLC ("*Thomson*"), (hereinafter collectively referred to as "*Defendants*") states and alleges as follows:

## INTRODUCTION

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C §101 *et seq*.

2. Plaintiff owns the rights to certain videos and licenses same for various uses including online and print publications.

3. Defendants provide breaking news content to their customers.

4. Defendants, without permission or authorization from Plaintiff, actively reproduced and displayed Plaintiff's work to its customers.

5. Defendants, without permission or authorization from Plaintiff, distributed Plaintiff's work by license, sale or other transfer of ownership to its customers.

## PARTIES

6. Plaintiff Global Weather Productions LLC is a Wyoming limited liability company

1

and who maintains a principal place of business in Sheridan County, Wyoming.

7. Upon information and belief, defendant Reuters News & Media, Inc., is a Delaware corporation with a principal place of business at 3 Times Square, Manhattan in New York City, New York.

8. Upon information and belief, defendant Thomson Reuters US LLC, is a Delaware limited liability company with a principal place of business at 3 Times Square, Manhattan in New York City, New York

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

10. This Court has personal jurisdiction over Defendants because they maintain their principal place of business in New York.

11. Venue is proper under 28 U.S.C. §1391(b)(2) because Defendants do business in this Judicial District and/or because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## FACTS COMMON TO ALL CLAIMS

**A.    Plaintiff's Copyright Ownership**

12. Plaintiff is the legal and rightful owner of certain videos which Plaintiff commercially licenses.

13. Plaintiff has invested significant time and money in building Plaintiff's video portfolio.

14. Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of Plaintiff's videos while many others are the subject of pending copyright applications.

15. Plaintiff's videos are original, creative works in which Plaintiff owns protectable copyright interests.

16. On or about June 30, 2024, Michael Brandon Clement ("*Clement*") and Jonathan

2

Petramala ("*Petramala*") arrived in Carriacou, Grenada ahead of Hurricane Beryl making a direct hit on the island as a Category 4 hurricane.

17. Clement and Petramala were the only media or storm chasers on the island.

18. Clement and Petramala took extensive personal risk and expended significant resources to capture video footage of Hurricane Beryl.

19. On July 1, 2024, Clement published an exclusive video of Hurricane Beryl making landfall in Carriacou, Grenada as a Category 4 hurricane ("*Video*") (a true copy of a still frame image from the Video is attached hereto as part of Exhibit 1).

20. The Video, titled "Hurricane Beryl Landfall Carriacou raw power 4k - Eye wall of category 4" was published by Clement on the "@WxChasing" YouTube account at URL: https://www.youtube.com/watch?v=N7ce0TUdiGc.

21. The Video is watermarked with the WX Chasing logo. See Exhibit 1.

22. Plaintiff acquired all rights in and to the Video by way of written assignment.

23. On August 2, 2024, the Video was registered by the USCO under Registration No. PA 2-489-870.

24. Clement created the Video with the intention of it being used commercially and for the purpose of display and/or public distribution of a newsworthy weather event.

25. Clement created the Video with the intention of licensing it to news organizations and other media outlets that wished to report on Hurricane Beryl using exclusive footage.

C.   **Defendants' Infringing Activity**

1. **Background.**

26. Upon information and belief, Defendants are sophisticated media companies which own a comprehensive portfolio of digital marketing platforms and have advanced operational and strategic expertise in the media industry where copyright is prevalent.

27. Upon information and belief, Defendants' staff have significant experience in copyright matters and are familiar with specific journalistic practices including the need to ensure

that images and videos used in their articles or distributed to their clients have been properly licensed.

28. Upon information and belief, Defendants have not implemented adequate internal policies to verify copyright ownership before content use or distribution, indicating a gross negligence in legal compliance, which are essential for companies with Defendants' reach, capabilities, and level of sophistication.

29. Upon information and belief, Defendants' internal policies, if any, are either not designed to verify copyright ownership before content use or distribution, or are systematically ignored, indicating a willful, recurring disregard for copyright compliance.

30. For example, in 2021, Defendants began offering an online training course on best practices in digital journalism. The link to the course can be found at URL: https://reutersdigitaljournalism.com/?l=en.

31. Defendants' training course stresses, among other things, the importance of identifying and verifying the owner of a video or photo, obtaining permission from the owner to use their work, specifically explaining how the work will be used, and giving proper attribution. See screenshots of excerpts from the training course annexed hereto as Exhibit 3.

32. The course goes on to explain the importance of checking that a photo or video is the first version posted online, as "anything posted afterward is likely a copy." See id.

33. In 2019, Defendants also produced an in-depth course on manipulated media. See URL: https://www.reuters.com/article/technology/introducing-the-reuters-guide-to-manipulated-media-in-association-with-the-face-idUSKBN1YY142/.

34. Defendants' article discussing the manipulated media course states:

> "For almost every globally significant news event of 2019 – and of these there were many - it is possible to identify misleading video and pictures that were shared on social media in the aftermath.
>
> This year the Reuters newsroom discovered, among many other examples, that a harrowing video shared during Cyclone Idai had been shot in Libya five years earlier. We watched videos going viral following Brazils'

    Brumadinho dam collapse that were from different, unrelated incidents. And during conflict between India and Pakistan in February this year, we saw numerous false clips circulating, including one taken from a video game."

 35. Relevant to this case, Defendants failed to follow their own content verification strategies and best practices in digital journalism.

 36. Defendants operate their joint commercial enterprise, specifically the production, acquisition, and dissemination of news media content, on a global scale for profit.

 37. Defendants offer paid content licensing and subscription services to the public and, upon information and belief, Defendants profits from these activities.

 38. Upon information and belief, in 2023, Defendants partnered with ViralBear, LLC, a company headquartered in Tbilisi, Georgia, to obtain video content from ViralBear.

 39. On July 1, 2024 at 10:01 p.m., Defendants contacted Clement via the X (formerly Twitter) platform's direct messaging to inquire about using Clement's hurricane footage from Carriacou, Grenada. A copy of the message is annexed hereto as part of Exhibit 4.

 40. Defendants specifically inquired about using the Video which they stated they discovered on the same "@WxChasing" YouTube account (cited above) at URL: https://www.youtube.com/watch?v=N7ce0TUdiGc.

 41. On July 1, 2024 at 5:54 p.m., an account on X known as @Maeestro (john l) uploaded footage from Plaintiff's Video without authorization from Plaintiff or Clement. Screenshots of the @Maeestro post are annexed hereto as Exhibit 5.

 42. The footage from Plaintiff's Video was uploaded to the @Maeestro account at URL: https://twitter.com/Maeestro/status/1807895681354670138.

 43. The caption of the post by @Maeestro contained the near identical video title as Plaintiff's Video, that is "Hurricane Beryl Landfall Carriacou raw power (category 4)". See Exhibit 5.

 44. The watermarked WX Chasing logo was cropped out of the Video footage posted on the @Maeestro account.  Compare Exhibit 1 and Exhibit 5.

5

45. On July 3, 2024 at 11:37 a.m., Defendants again contacted Clement via X direct messaging to inquire about using Clement's hurricane footage from Carriacou, Grenada. A copy of the message is annexed hereto as part of Exhibit 4.

46. On July 3, 2024 at 11:42 a.m., Clement responded to Defendants that he does not allow for redistribution of content.

47. Eleven minutes later on July 3, 2024 at 11:53 a.m., Defendants contacted X user @Maeestro via the X platform to inquire about the same hurricane footage from Plaintiff's Video. A copy of the message is annexed hereto as part of Exhibit 5.

48. On July 3, 2024 at 1:27 p.m., Defendants' partner, ViralBear contacted X user @Maeestro to inquire about the hurricane footage from Plaintiff's Video. A copy of the message is annexed hereto as part of Exhibit 5.

49. ViralBear's comment to @Maeestro states "Did you shoot this video? May we and our media partners use this video with credit to you? Btw, what's the date and location of this video? (viralbear.media/permission)".

50. On July 3, 2024 at 2:09 p.m., @Maeestro simply responded "yes" to the comment.

51. Upon information and belief, by virtue of its own earlier comment on the @Maeestro post, Defendants would have received and did receive a contemporaneous alert when ViralBear and @Maeestro posted their further comments.

52. On or about July 4, 2024, ViralBear displayed footage from Plaintiff's Video on its website at URL: https://viralbear.media/library/6818. See Exhibit 6.

53. ViralBear further displayed footage from Plaintiff's Video on its YouTube channel at URL: https://www.youtube.com/watch?v=8ONxrLfCLwg. See Id.

2. **Defendants' Unauthorized Reproduction, Display and Distribution of the Video.**

54. Upon information and belief, Pelmorex doing business as The Weather Network, a Canadian weather information channel ("*Pelmorex*"), subscribes to Defendants' content subscription services.

6

55. Upon information and belief, Pelmorex licenses content from Defendants.

56. Upon information and belief, Defendants distributed footage from Plaintiff's Video to Pelmorex for use on The Weather Network.

57. Upon information and belief, Defendants licensed footage from Plaintiff's Video to Pelmorex for use on The Weather Network.

58. Upon information and belief, Defendants distributed and licensed footage from Plaintiff's Video to their additional clients who are unknown at this time.

59. On or about July 3, 2024, The Weather Network displayed footage from Plaintiff's Video on its YouTube account known as "@weathernetwork" at URL: https://www.youtube.com/shorts/xpkLgNbfGhg. Copies of screengrabs of the @weathernetwork account, including the same still frame image from the Video, are attached collectively hereto in Exhibit 2 (*Exhibit 2-Infringement #1*).

60. The Weather Network credits "VIRALBEAR/REUTERS" as the source of the video. See Exhibit 2.

61. On information and belief, Defendants distributed segments from the Video to their paying subscribers and/or licensees.

62. Without permission or authorization from Plaintiff, Defendants volitionally reproduced and displayed footage from Plaintiff's copyright protected Video.

63. Defendants also broadly distributed footage from Plaintiff's Video to various third-parties by sale or other transfer of ownership, or by rental, lease, or lending and authorized the use of same in further violation of Plaintiff's copyrights.

64. On or about July 17, 2024, Plaintiff, via Clement, issued a copyright strike against ViralBear through Facebook and YouTube for the use of the Video.

65. On July 23, 2024, ViralBear confirmed it distributed the Video to Defendants. See correspondence annexed to Exhibit 7.

66. Upon information and belief, ViralBear notified Defendants of Clement's copyright strike related to the Video in or around July 2024.

67. On July 30, 2024, Defendants' employee Hannah Owen ("Owen") contacted Clement by email advising that their client, Pelmorex (The Weather Channel in Canada) received a copyright strike from Clement regarding a video Pelmorex purchased from Defendants, the video being Plaintiff's Video. See correspondence annexed to <u>Exhibit 8</u>.

68. Owen further confirmed that the video in question was provided by one of their content Partners, ViralBear, who confirmed it received false rights for the video.

69. Defendants' unauthorized uses set forth above are referred to hereinafter as the "Infringement".

70. The Infringement includes a URL ("*Uniform Resource Locator*") for a fixed tangible medium of expression that was sufficiently permanent or stable to permit it to be communicated for a period of more than a transitory duration and therefore constitutes a specific infringement.

71. The Infringement is a reproduction of segments of Plaintiff's original and exclusive Video that was directly reproduced and displayed by Defendants.

72. Upon information and belief, the Video was willfully and volitionally reproduced, displayed and distributed by Defendants to their clients.

73. Upon information and belief, Defendants engaged in the Infringement knowingly and in violation of applicable United States copyright laws.

74. Upon information and belief, Defendants had the legal right and ability to control and limit their infringing activities, and/or had the right and ability to exercise, such right.

75. Upon information and belief, Defendants have policies and procedures in place to verify the accuracy and source of content they display and distribute to clients.

76. Defendants negligently failed to follow their own policies and procedures in reckless disregard of Plaintiff's copyrights.

77. Defendants intentionally failed to follow their own policies and procedures in violation of Plaintiff's copyrights.

78. Defendants did not verify the metadata from the Video footage they received.

79. Defendants did not verify the file size of the Video footage they received.

80. Defendants did not verify the source of the Video footage they received.

81. Upon information and belief, Defendants received a financial benefit directly attributable to the Infringement.

82. Upon information and belief, the Infringement caused Defendants to realize an increase in the revenues generated through their paid content licensing and subscription services.

83. Upon information and belief, Defendants received revenue generated through the distribution of Plaintiff's Video to third-parties by sale or other transfer of ownership, or by rental, lease, or lending.

84. Upon information and belief, a large number of people have viewed the unlawful copies of the Video displayed and distributed by Defendants.

85. Upon information and belief, Defendants at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

86. Upon information and belief, Defendants at all times had the ability notify their subscription account holders to stop the reproduction and display of Plaintiff's copyrighted material.

87. Upon information and belief, Defendants, after receiving notice of Plaintiff's copyright infringement claim herein, failed to notify their customers and/or account holders of Plaintiff's claims.

88. Upon information and belief, Defendants, after receiving notice of Plaintiff's claims, did not take any action to recall the subject video downloads by their customers and/or account holders.

89. Defendants' use of the footage from Plaintiff's Video, if widespread, would harm Plaintiff's potential market for the Video.

90. Defendants' distribution of the footage from Plaintiff's Video greatly harmed Plaintiff's actual market for the Video.

91. As a result of Defendants' misconduct, Plaintiff has been substantially harmed.

## FIRST COUNT
### *(Direct Copyright Infringement, 17 U.S.C. §501 et seq.)*

92. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

93. The Video is an original, creative work in which Plaintiff owns valid copyrights.

94. The Video is properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

95. Plaintiff has not granted Defendants a license or the right to use or distribute the Video in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyrights to Defendants.

96. Without permission or authorization from Plaintiff, and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendants improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in its copyrights.

97. Defendants' reproduction, display and distribution of the Video constitutes willful copyright infringement.

98. Upon information and belief, Defendants willfully infringed upon Plaintiff's Video in violation of Title 17 of the U.S. Code, in that Defendants reproduced, displayed, distributed, used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Video without Plaintiff's consent or authority.

99. As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendants' profits attributable to the Infringement as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against each Defendant for each Infringement pursuant to 17 U.S.C. § 504(c).

100. As a result of the Defendants' violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs

pursuant to 17 U.S.C. § 505 from each Defendant.

101. As a result of Defendants' violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of its copyright pursuant to 17 U.S.C. § 502.

## JURY DEMAND

102. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests judgment as follows:

That the Court enters a judgment finding that Defendants have infringed upon Plaintiff's rights to the Video in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

a. finding that Defendants infringed upon Plaintiff's copyright interest in and to the Video by copying, displaying and distributing it without a license or consent;

b. for an award of actual damages and disgorgement of all of Defendants' profits attributable to the Infringement as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendants for each Infringement pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendants from any infringing use of any of Plaintiff's works;

d. for costs of litigation and reasonable attorney's fees against Defendants pursuant to 17 U.S.C. § 505;

e. for pre-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

DATED: October 15, 2024                                 Respectfully submitted,

**SANDERS LAW GROUP**

By: ___/s/ Renee J. Aragona___
Craig B. Sanders, Esq.
Renee J. Aragona, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
Email: raragona@sanderslaw.group
File No.: 130847

*Attorneys for Plaintiff*

12